# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| ROSEMARY RANSOM, | : | |
|---|---|---|
| Plaintiff, | : | |
| v. | : | 3:12-CV-01243 |
| | : | (JUDGE MARIANI) |
| CARBONDALE AREA SCHOOL DISTRICT, | : | |
| Defendant. | : | |

## MEMORANDUM OPINION

### I. Introduction

Presently before the Court is a Motion to Dismiss the three causes of action alleged in a First Amendment retaliation suit. (Doc. 6). For the reasons discussed below, the Court will deny the Motion as to Counts I and II and grant it in part as to Count III. The Court will dismiss Count III as alleged, but will grant the Plaintiff leave to amend.

### II. Procedural History

Rosemary Ransom filed a Complaint (Doc. 1) before this Court on June 28, 2012. The Complaint alleged violations of her federal constitutional rights, as well as a pendent state tort claim. Specifically, Ransom alleged that, at all relevant times, she worked as a van driver for Mazz Transportation, LLC, which provided bus-driving services to the Carbondale Area School District. (Compl., Doc. 1, at ¶ 5.) She alleged that she

acquired all necessary certifications to provide such services to Carbondale students, and that she performed her services "in a competent manner and satisfied the standards of job performance set by" the School District and Mazz Transportation. (*Id.* at ¶¶ 6-10.)

During this time, however, Ransom also had a child who attended school in the Carbondale School District. (*Id.* at ¶ 11.) In May 2010, she filed a lawsuit in the Middle District of Pennsylvania against the School District, on behalf of her child. (*Id.*) This lawsuit allegedly concerned educational opportunities afforded her child at school. (*Id.*)

Though Ransom planned to provide bus-driving services for the 2011-12 school year, and was assigned by Mazz to provide these services, she was allegedly notified without advance warning, prior to the start of the new school year, that the School District had revoked her certification to provide these services, without a hearing. (*Id.* at ¶¶ 12-17.) She alleged that she was provided with no reasonable explanation for the revocation and that it was in fact retaliation for the lawsuit she had brought previously. (*Id.* at ¶¶ 17, 21.) Moreover, the revocation allegedly caused her workable hours to be reduced, leading to a loss of wages and other harms. (*Id.* at ¶¶ 18, 25-26.)

Based on the foregoing allegations, Ransom alleged three causes of action against the School District. First, she brought a claim for unconstitutional retaliation for exercise of her First and Fourteenth Amendment rights, under 42 U.S.C. § 1983. (*Id.* at ¶¶ 27-32.) Second, she brought a claim for deprivation of her Fourteenth Amendment

2

right to procedural due process, under § 1983, with respect to the loss of her certification without a predeprivation hearing. (*Id.* at ¶¶ 33-35.) Third, she brought a state law claim for intentional interference with contractual relations. (*Id.* at ¶¶ 36-41.) Defendant timely filed a Motion to Dismiss (Doc. 6) on all counts. The Court now turns to the merits of that motion.

## III. Standard of Review

A complaint must be dismissed under Federal Rule of Civil Procedure 12(b)(6), if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007). The plaintiff must aver "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

"Though a complaint 'does not need detailed factual allegations, . . . a formulaic recitation of the elements of a cause of action will not do.'" *DelRio-Mocci v. Connolly Prop. Inc.*, 672 F.3d 241, 245 (3d Cir. 2012) (citing *Twombly*, 550 U.S. at 555). In other words, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) (internal citations and quotation marks omitted). A court "take[s] as true all the factual allegations in the Complaint and the reasonable inferences that can be drawn from those facts, but . . . disregard[s] legal conclusions and threadbare recitals of the elements of a

cause of action, supported by mere conclusory statements." *Ethypharm S.A. France v. Abbott Laboratories*, 707 F.3d 223, 231, n.14 (3d Cir. 2013) (internal citations and quotation marks omitted).

> *Twombly* and *Iqbal* require [a district court] to take the following three steps to determine the sufficiency of a complaint: First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not show[n]—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citations and quotation marks omitted). This "plausibility" determination will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*.

However, even "if a complaint is subject to Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).

> [E]ven when plaintiff does not seek leave to amend his complaint after a defendant moves to dismiss it, unless the district court finds that amendment would be inequitable or futile, the court must inform the plaintiff that he or she has leave to amend the complaint within a set period of time.

*Id*.

4

## IV. Analysis

### 1. Count I: Retaliation under the Fourteenth Amendment

As to Count I, the School District appears to argue for dismissal on narrow grounds. It only requests dismissal of "any independent claim under the Fourteenth Amendment to the United States Constitution" contained in that count. (*See* Def.'s Mem. of Law in Supp. of Mot. to Dismiss, Doc. 7, at 13-14.) Defendant argues that the Fourteenth Amendment contains no substantive rights enforceable under Section 1983, and so any independent Fourteenth Amendment claim must be dismissed. (*See id.* at 5.) It does not, however, appear to challenge the propriety of a claim brought under the First Amendment. (*See* Def.'s Reply Mem. of Law, Doc. 9, at 2.)

The Court can only conclude that the School District has misconstrued Ransom's pleadings. Count I is entitled "Retaliation for Exercise of Rights under the First and Fourteenth Amendments in Violation of 42 U.S.C. § 1983." (Compl. at 7.) But given that both sides appear to accept that Ransom's First Amendment freedoms are implicated here, this cause of action could not be alleged in a different manner. The text of the First Amendment protects the freedom of speech only against the federal government; it is the Fourteenth Amendment that has been interpreted to extend this protection to the states. *See New York Times Co. v. Sullivan*, 376 U.S. 254, 276-77, 84 S. Ct. 710, 724, 11 L. Ed. 2d 686 (1964) ("It is true that the First Amendment was originally addressed

5

only to action by the Federal Government . . . . But this distinction was eliminated with the adoption of the Fourteenth Amendment and the application to the States of the First Amendment's restrictions.") (internal citations omitted). Because Carbondale Area School District is a subsidiary of the Commonwealth of Pennsylvania, and not part of the federal government, then Ransom—or any other similarly-situated Plaintiff—must proceed through the Fourteenth Amendment in order to allege a First Amendment claim against it.

There is no reason to believe that Ransom has done otherwise. The First and Fourteenth Amendment are both grouped under "Count I" and are not alleged as separate claims. There is nothing improper about this. Indeed, it is the way such a pleading must be structured as a matter of law. Accordingly, the Court will deny the Motion to Dismiss as to Count I.

### 2. Count II: Deprivation of a Property Interest without Procedural Due Process

Next, the School District moves to dismiss Count II on the ground that "Plaintiff has not, and it is respectfully submitted, cannot, identify a property interest and/or entitlement to employment sufficient to trigger due process concerns under the Fourteenth Amendment." (Doc. 7 at 8.) Initially, the School District based its argument on the facts that (1) Ransom has not shown that she is actually employed by the school

6

district, rather than being an employee of a private contractor and (2) even if she were a school district employee, such employment would be at will and therefore not subject to due process protection. (*Id.* at 7-8.) The Court need not rule on the merits of these arguments because it agrees with Ransom that they are inapplicable. (*See* Pl.'s Mem. of Law in Opp. to Mot. to Dismiss, Doc. 8, at 11.) That is, the alleged property interest does not concern Ransom's employment, whether with Mazz or the School District. Instead, it concerns her authorization to provide transportation services for the School District: authorization which was allegedly both provided and revoked by the District, a government entity.

In the School District's reply brief, it seems to recognize this point, but still contends that Ransom had no cognizable property interest because she "had no expectation or guarantee from the School District relative to driving services." (*See* Reply Mem. of Law in Supp. of Mot. to Dismiss, Doc. 9, at 4.) It argues that the continuation of driving services was just a "subjective expectancy" and not a property interest. (*Id.* at 5.)

At this stage of the litigation, the Court cannot agree that, as a matter of law, Ransom did not have a property interest in her driving authorization. The definition of a "property interest" is well-established by case law:

> The Fourteenth Amendment's procedural protection of property is a safeguard of the security of interests that a person has already acquired in

7

specific benefits. These interests—property interests—may take many forms.

Thus, the Court has held that a person receiving welfare benefits under statutory and administrative standards defining eligibility for them has an interest in continued receipt of those benefits that is safeguarded by procedural due process. *Goldberg v Kelly*, 397 U.S. 254, 90 S. Ct. 1011, 25 L. Ed. 2d 287 (1969). . . .

To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined. It is a purpose of the constitutional right to a hearing to provide an opportunity for a person to vindicate those claims.

Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits. Thus, the welfare recipients in *Goldberg v. Kelly, supra*, had a claim of entitlement to welfare payments that was grounded in the statute defining eligibility for them.

*Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 576-77, 92 S. Ct. 2701, 2708-09, 33 L. Ed. 2d 548 (1972).

Property interests may only be deprived subject to constitutionally adequate procedures. As both parties in the present case agree:[1]

An essential principle of due process is that a deprivation of life, liberty, or property "be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313, 70 S. Ct. 652, 656, 94 L. Ed. 865 (1950). We have

---

[1] *See* Doc. 7 at 6; Doc. 8 at 11.

8

> described "the root requirement" of the Due Process Clause as being "that an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest." *Boddie v. Connecticut*, 401 U.S. 371, 379, 91 S. Ct. 780, 786, 28 L. Ed. 2d 113 (1971) (emphasis in original); *see Bell v. Burson*, 402 U.S. 535, 542, 91 S. Ct. 1586, 1591, 29 L. Ed. 2d 90 (1971).

*Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542, 105 S. Ct. 1487, 1493, 84 L. Ed. 2d 494 (1985).

As pled, Ransom's authorization to provide transportation services may be considered analogous to a driver's license, in that, while it is not the direct source of her income, it is intimately connected to it. Based on similar reasoning, the Supreme Court has found that a constitutionally-protected property interest existed in a driver's license when a clergyman whose ministry involved extensive travel was deprived of one. *See Bell v. Burson*, 402 U.S. 535, 537-38, 91 S. Ct. 1586, 1588-89, 29 L. Ed. 2d 90 (1971). It held:

> Once licenses are issued, as in petitioner's case, their continued possession may become essential in the pursuit of a livelihood. Suspension of issued licenses thus involves state action that adjudicates important interests of the licensees. In such cases the licenses are not to be taken away without that procedural due process required by the Fourteenth Amendment. This is but an application of the general proposition that relevant constitutional restraints limit state power to terminate an entitlement whether the entitlement is denominated a "right" or a "privilege."

*Id.* at 539; *cf. also Stein v. Bd. of City of New York, Bureau of Pupil Transp.*, 792 F.2d 13, 17 (2d Cir. 1986) (noting that "certification of a driver to work on Board of Education

9

routes might bear some comparison to" the protected property interest in a professional license, but declining to reach the issue). At least at the motion to dismiss stage, the Court finds these opinions sufficiently analogous to indicate that Ransom has plausibly pled a property interest.

Likewise, the Court agrees with Plaintiff that *Stana v. School District of the City of Pittsburgh*, 775 F.2d 122 (3d Cir. 1985), is sufficiently persuasive to allow her to survive a motion to dismiss. In *Stana*, the Pittsburgh School District maintained a list of job applicants who were eligible to be hired as teachers. *Id.* at 124. "Stana's retention on the eligibility list, which was a *sine qua non* for her placement in a teaching position with the Pittsburgh School District, implicated a constitutional 'property' interest created by state law." *Id.* at 125. Similarly, Ransom's authorization to provide transportation services for the Carbondale School District, as pled, is also a *sine qua non* to continue to provide those services, which in turn constitutes a large part of her livelihood. Though the Court has no reason to believe that Ransom would necessarily lose her job with Mazz if she lost her authorization to drive for the School District, Ransom has nonetheless pled sufficient facts to show that she would be seriously and adversely impacted by such a loss. On the face of the Complaint, her loss of authorization plausibly appears to be "state action that adjudicates important interests of the"

authorized person, and therefore may be entitled to procedural due process protections. *Cf. Bell*, 402 U.S. at 539.

Another aspect of *Stana* is likewise on point. The Third Circuit found that the Pittsburgh School District maintained an official policy for ranking individuals on and removing them from its eligibility list, but that that policy was not followed in Stana's case.

> [I]t is uncontested on this record that the School District and Allebrand, the official responsible for the eligibility list on which Stana's name appeared, had an established policy for placement and rank on the list and for maintenance of names on that list for a specified period of time. It is also undisputed that Stana originally met the criteria for placement on the list. Allebrand testified at his deposition that the School District indicates to the teacher, "that if a person places on the list, their name will remain on that list for at least two years." He further stated that to keep the list current, people who no longer demonstrate an active interest are removed after two years but interested persons remain on the list for four years. This is consistent with Stana's testimony that she was informed by another school official that names remain on the eligibility list for four years. Stana's name was removed from the list without notice and an opportunity to be heard before two years had passed.

*Stana*, 775 F.2d at 126 (internal citations omitted).

In the present case, Ransom has pled analogous facts. That is, she has alleged that Carbondale School District had an established procedure for authorizing contractors to provide transportation services, that Ransom met all the criteria and had been providing transportation services for several years, and that, suddenly and without warning or hearing, the School District revoked her authorization. (Compl. at ¶¶ 6-15.)

11

Under *Stana*, this gives rise to a plausible claim of deprivation, without due process, of a protected property interest.

Accordingly, the Court finds no reason, at this early stage, to find that Ransom's claim to a property interest fails as a matter of law. Defendant's Motion to Dismiss Count II is therefore denied.

### 3. Count III: Intentional Interference with Contractual Relations

Finally, the School District moves to dismiss Count III of Plaintiff's Complaint, which alleges intentional interference with Ransom's contractual relations with Mazz. The School District argues that "conspicuously absent from the Complaint . . . is an actual averment indicating or making reference to an actual contract or the inclusion of a written document setting forth the terms and conditions of her employment that provides protections for her employment beyond an at-will employment." (Doc. 7 at 10.) This is important because Pennsylvania law appears to hold that an at-will employee cannot allege the tort of intentional interference with contractual relations unless his or her employment is prospective. *See Hennessy v. Santiago*, 708 A.2d 1269, 1278-79 (Pa. Super. Ct. 1998). Moreover, "[t]he law in Pennsylvania is abundantly clear that, as a general rule, employees are at-will, absent a contract." *Stumpp v. Stroudsburg Mun. Auth.*, 658 A.2d 333, 335 (Pa. 1995). So unless Ransom can provide evidence of an

12

actual contract, she would seem to fall under the *Hennessy* rule, which would bar her claim for intentional interference with contractual relations.

There is some ambiguity over *Hennessy's* precedential value and whether the Pennsylvania Supreme Court would accept it if given the chance. *See, e.g., White v. Brommer*, 747 F. Supp. 2d 447, 468-72 (E.D. Pa. 2010) (summarizing the debate and collecting district court predictions on how the Supreme Court would rule). The decision rests on shaky ground because, as argued by *White* and similar courts, it fails to account for contrary precedent. *See, e.g., id.* at 472. Specifically, in the case of *Yaindl v. Ingersoll-Rand Co.*, 422 A.2d 611 (Pa. Super. Ct. 1980), the Superior Court stated in a footnote that "[o]f course, an action for intentional interference with the performance of a contract lies even though the contract interfered with is terminable at the will of the parties." *Yaindl*, 422 A.2d at 618 n.6. The *Hennessy* court breezily dismisses this statement as dicta. *Hennessy*, 708 A. 2d at 1278. Nonetheless, the *Yaindl* statement is based on comment g of section 766 of the Second Restatement of Torts, *see Yaindl*, 422 A. 2d at 618 n.6, and the Supreme Court of Pennsylvania has expressly incorporated section 766 into its substantive law, *see Adler, Barish, Daniels, Levin and Creskoff v. Epstein*, 393 A. 2d 1175, 1181-1182 (Pa. 1978) (citing *Birl v. Philadelphia Elec. Co.*, 167 A. 2d 472 (1961)). Section 766 states:

> One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person

by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract.

Restatement (Second) of Torts § 766. Comment g adds, in pertinent part:

> *Contracts terminable at will.* A similar situation exists with a contract that, by its terms or otherwise, permits the third person to terminate the agreement at will. Until he has so terminated it, the contract is valid and subsisting, and the defendant may not improperly interfere with it. The fact that the contract is terminable at will, however, is to be taken into account in determining the damages that the plaintiff has suffered by reason of its breach.

*Id.*, cmt. g. The implication of comment g is that at-will contracts are covered by the Restatement's definition of the tort of intentional interference. *See also Curran v. Children's Serv. Ctr. of Wyoming Cnty., Inc.*, 578 A. 2d 8, 13 (1990) ("A cause of action for intentional interference with a contractual relationship may be sustained even though the employment relationship is at-will.") (citing *Yaindl*, 422 A.2d at 618, n.6; Restatement § 766, cmt. g). Otherwise, it would make no sense to discuss how a court would assess damages for interference with an at-will contract. *Hennessy* neither addresses comment g nor the explicit language of *Curran, supra*, which held that *Yaindl* and the Restatement are binding law.

But regardless of whether this or any other federal court considers *Hennessy* to be well-reasoned, the fact remains that it is the Superior Court's most recent word on the issue, and therefore is currently the law of Pennsylvania. *See Sorber v. Am. Motorists*

14

*Ins. Co.*, 680 A.2d 881, 882 (Pa. Super. Ct. 1996) ("As long as [a Superior Court] decision has not been overturned by our Supreme Court, it remains binding precedent."). And significantly, the Superior Court explicitly reaffirmed *Hennessy* in a more recent decision, *Haun v. Community Health Systems*, 14 A.3d 120, 125 (Pa. Super. Ct. 2011), a full thirteen years after *Hennessy* was decided, and over a strong dissent. The *Haun* court treated *Hennessy* as binding precedent that trumps *Yaindl* and *Curran*. *Id.* at 125 n.1. It concluded that "[u]nless or until *Hennessy* is overturned by an *en banc* panel of this Court, or by a decision of the Pennsylvania Supreme Court, it continues to be viable precedent for this Court and for the courts of common pleas." *Id.* at 125.

The role of the District Court is to apply the substantive law of Pennsylvania. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78-80, 58 S. Ct. 817, 822-23, 82 L. Ed. 1188 (1938).

> [When there is] no reported decision by the Pennsylvania Supreme Court or any other Pennsylvania court addressing the precise issue before it, it [is] the duty of the District Court to predict how the Pennsylvania Supreme Court would interpret [the relevant issue] if presented with this case. *See, e.g., Pennsylvania Glass Sand Corp. v. Caterpillar Tractor Co.*, 652 F.2d 1165, 1167 (3d Cir. 1981). In so doing, a federal court can also give due regard, but not conclusive effect, to the decisional law of lower state courts. *See, e.g., Burke v. Maassen*, 904 F.2d 178, 182 (3d Cir.1990). The opinions of intermediate appellate state courts are "not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." *West v. AT & T Co.*, 311 U.S. 223, 237, 61 S.Ct. 179, 85 L.Ed. 139 (1940).

*Nationwide Mut. Ins. Co. v. Buffetta*, 230 F.3d 634, 637 (3d Cir. 2000).

15

This Court is not convinced that the Supreme Court would decide to overrule *Hennessy* or *Haun*. Indeed, in the fifteen years since *Hennessy* was decided, no such effort has been made. Accordingly, the "predictions" that the Supreme Court will overturn *Hennessy* appear more like *opinions* that the Court *should* overturn it. But it is not the purview of this Court to determine how Pennsylvania should structure its common law. Therefore, until there is some convincing evidence that Pennsylvania law will in fact change, the Court cannot give the opinions of the parties or of various other non-precedential federal court decisions binding effect.

Moreover, despite the uncertainty surrounding the *Hennessy* decision, this Court is not an outlier in refraining to predict its demise. It joins several other district courts that have had occasion to rule on the issue, and that have also held that there is insufficient evidence to conclude that *Hennessey* does not bind them. *See Davis v. Alcoa Mill Products, Inc.*, 2004 WL 2063124, at *1 (E.D. Pa. 2004); *Carter v. Philadelphia Stock Exch.*, 1999 WL 715205, at *5 (E.D. Pa. 1999); *Parvensky-Barwell v. Cnty. of Chester*, 1999 WL 213371, at *8 (E.D. Pa. 1999); *Buckwalter v. Parker*, 1998 WL 195701, at *1-2 (E.D. Pa. 1998).

But even though *Hennessy* applies, the Court still cannot say as a matter of law that Ransom's intentional interference claim must fail, because Ransom has not pled

16

with any kind of specificity what kind of employee she was or what kind of contract she had.

The Complaint only states that Ransom "had a contractual relationship" with Mazz. (Compl. at ¶ 37; *see also id.* at ¶ 5.) While the Court can accept the factual allegation that a contractual relationship was present, the implications of that relationship can be wide-ranging depending on what kind of contract—written or oral, tacit or explicit—was in place. Even if a contract existed, its legal implications remain unknown on the face of the Complaint—a not insignificant omission under *Hennessy*. Accordingly, the allegation that an unspecified "contractual relationship" gives rise to a claim for relief is the kind of legal conclusion that, under *Iqbal*, is "not entitled to the assumption of truth." See *Iqbal*, 556 U.S. at 679. In order to state a claim, Plaintiff would need to allege specific facts to show at least (1) what kind of contract she had, (2) whether her employment was at-will, and (3) whether her employment was continuous or prospective.[2]

---

[2] Though the Plaintiff's Brief in Opposition to the Motion to Dismiss indicates that she had "prospective" employment, (Doc. 8 at 16), such does not appear on the face of the Complaint. The Court interprets the Complaint to say that Ransom was a continuous employee of Mazz, but that she had the expectation of being allowed to provide bus services for the School District each new school year.

Plaintiff's Brief in Opposition argues that Ransom's contract was prospective because she had not started providing her bus services for the 2011-12 school year at the time her authorization was revoked. (*Id.*) But this implies that the contract interfered with was the "contract" (if it can be characterized as such) with the School District to provide transportation. However, the actual wording of Count III of her Complaint seems to allege interference with a different contract: that is, with Ransom's contractual relationship with her employer, Mazz. (Compl. at ¶ 40.)

Only this latter type of contract fits the Restatement definition. That is because the former does not involve a third person; one would have to assume that the School District induced itself to not perform its

Accordingly, the Court will dismiss Count III of Plaintiff's Complaint. But because amendment would not be futile, and because the facts enumerated above could state a valid cause of action for interference with contractual relations if properly alleged, the Court will grant Ransom leave to amend so that she may correct the defects cited.

Finally, the Court does not agree with the School District's alternative argument that Ransom has not shown a causal connection between the revocation of her authorization to provide bus services and her reduction in working hours. (*See* Doc. 7 at 13.) Accepting all well-pled facts as true, Ransom has provided plentiful reasons to believe that the reduction in her working hours was connected to the loss of her authorization. To conclude at this stage that these were just two isolated and coincidental occurrences would defy common sense and cause serious undue prejudice to the Plaintiff.

## V. Conclusion

For the foregoing reasons, Defendant's Motion to Dismiss (Doc. 6) is **DENIED** as to Counts I and II and **GRANTED IN PART** as to Count III. Count III shall be dismissed with leave to amend. A separate Order follows.

---

own contract, which would be a bizarre interpretation of the tort. *Cf.* Restatement (Second) of Torts § 766. But if the latter interpretation is the correct one, then it is difficult to see how Ransom's contractual relationship was "prospective." Rather, it would seem to be the case that the School District interfered with her *continuous* relationship with Mazz, which would not be a cognizable cause of action under *Hennessey*.

18

Robert D. Mariani
United States District Judge